Ahren A. Tiller Esq. [SBN: 250608]
Email: ahren.tiller@blc-sd.com
Brett F. Bodie Esq. [SBN: 264452]
Email: brett.bodie@blc-sd.com
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone: (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiff
SALLY ANN CHRISTIAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SALLY ANN CHRISTIAN

Plaintiff,

vs.

CCO CALIFORNIA, INC. D/B/A CHECK CITY

Defendant.

Case No.: '26CV6358 W JAC

**COMPLAINT FOR DAMAGES FOR (1) VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1788.33); AND (2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227)**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT FOR DAMAGES</u>

## INTRODUCTION

1. SALLY ANN CHRISTIAN (hereinafter referred to as “Plaintiff”), by and through her Counsel of record, brings this action against CCO CALIFORNIA, INC. D/B/A CHECK CITY (hereinafter referred to as “CHECK CITY” or “Defendant”), pertaining to actions by Defendant to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of an Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47

U.S.C. § 227 *et seq.*, ("TCPA"), and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" [Cal. Civ. C. §§ 1788-1788.33]), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[1] Cal. Civ. Code § 1788.17 incorporates the FDCPA into the RFDCPA, by stating that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

3. The Telephone Consumer Protection Act (hereinafter referred to as "the TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." Telephone Consumer

[1] CA Civil Code §§ 1788.1(a)-(b)

Protection Act of 1991, Pub. L. No. 102-243, § 2, ¶ 13, 105 Stat. 2394 (congressional findings, codified as note following 47 U.S.C. § 227). See also, *Mims,* 132 S. Ct., at 744.

5. As the Ninth Circuit stated in *Henderson v. United Student Aid Funds, Inc.*:

> Under the TCPA, it is unlawful to "to make any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Telemarketers, debt collectors, and others obtain phone numbers consumers did not consent to be called on through skip tracing. Because consumers did not provide … "prior express consent" to be called on those numbers…. Therefore, if the numbers were also auto dialed, the calls violated the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii).
>
> *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1071-72 (9th Cir. 2019).

6. Further, as the United States District Court for the Central District of California explained in *Mata v. Veros Credit, LLC*, No. SA CV 16-98-DOC (JCGx), 2017 U.S. Dist. LEXIS 114373, at *9 (C.D. Cal. Jan. 20, 2017),

> It is sufficient for a plaintiff to allege the defendant used an "artificial or prerecorded voice" to place a call, "without any need to consider whether those plaintiffs also adequately alleged use of an ATDS." *Flores*, 2015 U.S. Dist. LEXIS 92176, 2015 WL 4340020, at *12; see also *Robinson v. Midland Funding, LLC*, No. 10CV2261, 2011 U.S. Dist. LEXIS 40107, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) and *Reyes v. Saxon Mortgage Servs., Inc.*, No. 09CV1366, 2009 U.S. Dist. LEXIS 125235, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009).

7. Allegations of the use of an artificial or prerecorded voice to place a call are sufficient alone to properly plead a claim under the TCPA.

> The Vaccaro court held, and I agree, that "[b]ecause the provision is written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS." 2013 U.S. Dist. LEXIS 99991, [WL] at *n. 2.; see also *Holcombe v. Credit Protection Ass'n, LP*, No. 14-cv-14, 2014 U.S. Dist. LEXIS 122054, 2014 WL 4252277, at *3 (M.D. Ga. Aug. 28, 2014); *Lardner v. Diversified Consultants Inc.,* No. 13-cv-22751, 17 F. Supp. 3d 1215, 2014 U.S. Dist. LEXIS 64205, 2014 WL 1778960, at *6 (S.D. Fla. May 1, 2014); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06342, 2011 U.S. Dist. LEXIS 24908, 2011 WL 881550, at *3 (N.D. Ill. March 11, 2011).

> *Warnick v. Dish Network LLC,* Civil Action No. 12-cv-01952-WYD-MEH, 2014 U.S. Dist. LEXIS 138381, at *36-37 (D. Colo. Sep. 30, 2014).

8. See also the United States Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.8 (2021) ("By contrast, Congress did impose broader prohibitions elsewhere in the TCPA. See, *e.g.,* 47 U.S.C. §§227(b)(1)(A) and (B) [prohibiting 'artificial or prerecorded voice' calls, irrespective of the type of technology used]").
9. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding herself, which are made and based upon personal knowledge.

## JURISDICTION AND VENUE

10. This action is based on Defendant's violations of the RFDCPA found in California Civil Code §§ 1788 - 1788.33; and the TCPA found in Title 47 of the United States Code Section 227, *et seq.*
11. This Court has jurisdiction over Defendant, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal question under the TCPA.
12. The unlawful practices alleged herein occurred in California, in the County of San Diego and violated California's Civil Code §§ 1788 - 1788.33.
13. This Court further has supplemental jurisdiction over Plaintiff's California Causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's Federal TCPA claims in this action, that they form part of the same case or controversy.
14. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California. Furthermore, Defendant regularly conducts business within State of California, County of San Diego, and Plaintiff resides in San Diego County, California.

**PARTIES**

15. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

16. Plaintiff is a natural person from whom a debt collector sought to collect a covered debt (here, a consumer debt) that was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

17. Defendant CHECK CITY is a Utah corporation. Plaintiff alleges that CHECK CITY is, and at all times mentioned herein was, licensed by the California Department of Financial Protection and Innovation as a deferred deposit transaction lender doing business as Checkcity.com, with its primary business address in Provo, UT, and doing business throughout the country, including this District.

18. Defendant CHECK CITY regularly attempts to collect using mails, electronic communication, and telephone, "consumer debts" allegedly owed to it, as that term is defined by Cal. Civ. Code §1788.2(f).

19. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

20. When individuals owe CHECK CITY debts for regular monthly payments on consumer loans, and other similar obligations, CHECK CITY collects on those consumer debts owed to it using the mail, electronic communications, and via the telephone. For example, when its customers are delinquent on their debts owed to CHECK CITY, as part of its routine business CHECK CITY calls those customers, sends them collection messages, letters by mail, and emails all seeking payment on the delinquent debt. Therefore, CHECK CITY is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

21. Cal. Civ. Code § 1788.17 states that every debt collector collecting or attempting

to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of Title 15 of the United States Code.

22. At all times relevant hereto, Defendant used, controlled, and/or operated a telephone system that was designed to place multiple calls to Plaintiff's cellular telephone using an artificial voice and/or prerecorded voice message ("Recorded Voice") as described in 47 U.S.C. § 227(b)(1)(A).

23. This case involves money, property, or their equivalent, due or owing, or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." Thus, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

## GENERAL ALLEGATIONS

24. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

25. Beginning in 2025, Defendant issued Plaintiff a series of repeated short-term high-interest consumer "payday" loans. Plaintiff entered into a cycle of taking out loans with Defendant, then repaying them and having to take another right after to cover the interest payments. On or about early 2026, Plaintiff took out her most recent payday loan from Defendant (the "CHECK CITY Loan"). The CHECK CITY Loan was taken out for, and used for, personal and household expenses.

26. Plaintiff made payments toward her CHECK CITY Loan when she took it out and continued making payments and maintained good standing on her CHECK CITY Loan until approximately April of 2026, when unfortunately, Plaintiff experienced financial hardship and was unable to maintain the payments.

27. Upon going into default on her CHECK CITY Loan, agents for CHECK CITY called Plaintiff multiple times and requested payment using a Recorded Voice,

often as many as twice per day, sometimes every day.

28. The collection calls were made to Plaintiff's cellular telephone.

29. Plaintiff sought out and retained an attorney to represent her with regards to the CHECK CITY Loan allegedly owed to CHECK CITY.

30. On June 5, 2026, Plaintiff's Counsel drafted and submitted for mailing a Cease-and-Desist letter, whereby Plaintiff's Attorney stated in writing that Plaintiff was revoking consent to call her via the use of a Recorded Voice, that Plaintiff had retained Counsel, and that CHECK CITY needed to cease calling Plaintiff pursuant to the RFDCPA ("Letter"). The Letter referenced the last four digits of Plaintiff's social security number next to her name to help CHECK CITY identify the Plaintiff's account.

31. The Letter informed CHECK CITY that Plaintiff was represented by Counsel and thus constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Plaintiff was represented by an attorney with respect to any and all debts allegedly owed to or serviced by Defendant, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Plaintiff's attorney, and the Letter clearly revoked any prior consent to contact Plaintiff via the use of an automated dialing system, text, or other method, including but not limited to calls with a prerecorded or automated voice messages.

32. The June 5, 2026, Letter was sent via Docsmit. Docsmit is a third-party company with no relation to Plaintiff or her Counsel. Docsmit's sole business is the sending of mail on behalf of customers. Docsmit provides a certificate of mailing and identifies the exact time a letter was sent.

33. Docsmit sent the June 5, 2026, Letter to the following addresses:

PO Box 970028, Orem, UT 84097
PO Box 970851, Orem, UT 84097
PO Box 35227, Las Vegas, NV 89133

34. Docsmit included with the letter the following attestation of mailing:

> *"The information herein is certified by Docsmit.com, Inc. ("Docsmit") to be true and accurate as of the date and time this report was generated. All of the records relating to this communication were made at times proximate to those indicated. Docsmit has not permitted any of the parties hereto to modify the records."*

35. The addresses the June 5, 2026, Letter was sent to are the three mailing addresses for Check City identified on CHECK CITY's website, as follows:

## Check City Online

| | |
|---|---|
| **Address:** | Check City Online<br>PO Box 970028<br>Orem, UT 84097 |

## Check City Utah

| | |
|---|---|
| **Address:** | Check City<br>PO Box 970851<br>Orem, UT 84097 |

## Check City Nevada

| | |
|---|---|
| **Address:** | Check City<br>PO Box 35227<br>Las Vegas, NV 89133 |

36. Therefore, CHECK CITY received the June 5, 2026, Letter.

37. However, despite receipt of the June 5, 2026, Letter referenced above which states that Plaintiff had revoked consent to be called via a Recorded Voice and had retained counsel regarding the subject debts, representatives of CHECK CITY have continued to call Plaintiff more than forty (40) times since June 5, 2026, on her cellular telephone via the use of Prerecorded Voice messages.

38. Plaintiff alleges that CHECK CITY called Plaintiff in excess of forty (40) times total, more than 2-3 times in a single day, and often more than seven (7) times per week, based on her recollection of the frequency of calls, as well as the records of calls that she has in her possession.

39. CHECK CITY, or its agents or representatives, have contacted Plaintiff on her cellular telephone over forty (40) times since June 5, 2026, including using an artificial and/or recorded voice.
40. CHECK CITY called Plaintiff from the number identified on Caller ID as (866) 274-4672.
41. On a number of occasions, Plaintiff answered the phone and spoke to agents who stated they were calling regarding her outstanding CHECK CITY Loan and informed Plaintiff she was delinquent on the CHECK CITY Loan and immediate payment was requested.
42. Additionally, sometimes Plaintiff answered calls from Defendant and there was a delay before the line made a sound, indicative of the use of an artificial or prerecorded voice by CHECK CITY.
43. Furthermore, on a number of occasions, Plaintiff received calls from CHECK CITY and when she answered there was no one present on the line at first, indicative of the use of an automated and/or prerecorded telephone system.
44. Sometimes when Plaintiff did not answer a call from CHECK CITY, Plaintiff then received multiple calls in rapid succession from CHECK CITY, indicative of the use of a computerized phone system.
45. Plaintiff recalls answering some of the calls from CHECK CITY and after a brief period of no response, an automated voice came on the line and began delivering what seemed to be a scripted message. On those occasions, Plaintiff subsequently terminated the call.
46. According to Plaintiff's recollection, the multiple calls contained an automated robotic type voice and were identical to the previously scripted calls, which is indicative of a prerecorded voice message using what appeared to be a computerized automated voice used in an attempt to collect upon the subject debt.
47. In addition, after receiving the Letter, CHECK CITY left numerous voicemail

messages on Plaintiff's cellular telephone from (866) 274-4672. Each of these voicemail messages was approximately twenty-one to twenty-two seconds long and delivered substantially the same scripted message: "Hello, this is a message from Check City. Please call us back at 866-274-4672. Again, this is an important message from Check City. Please return our call at 866-274-4672. Thank you." The identical length and identical script of these messages are indicative of an artificial or prerecorded voice.

48. Thus, some of the Defendant's calls to Plaintiff after receiving the letter contained an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

49. The multiple calls made by Defendant or its agents after June 5, 2026, were therefore made in violation of 47 U.S.C. § 227(b)(1).

50. Despite receipt of Plaintiff's Attorney's Letter sent to Defendant's mailing address, instructing Defendant to cease calling Plaintiff's cellular telephone via the use of a Recorded Voice, which provided irrefutable notice that Plaintiff had revoked consent to call her cellular telephone by any means and that she had retained Counsel regarding these alleged debts, Defendant CHECK CITY continues to contact Plaintiff repeatedly to date.

## CAUSES OF ACTION

## I.

## FIRST CAUSE OF ACTION

## Violations of California Rosenthal Fair Debt Collection Practices Act

## (California Civil Code § 1788.14(c))

51. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

52. When Plaintiff's Counsel sent the June 5, 2026, cease-and-desist Letter to CHECK CITY, Defendant CHECK CITY was aware, or reasonably should have

been aware, that Plaintiff was represented by an attorney.

53. Cal. Civ. Code §1788.14(c) provides in relevant part,

> No debt collector shall collect or attempt to collect a covered debt by means of the following practices:
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the covered debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by the attorney with respect to the covered debt and the notice includes the attorney's name and address and a request by the attorney that all communications regarding the covered debt be addressed to the attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply if prior approval has been obtained from the debtor's attorney, or if the communication is a response in the ordinary course of business to a debtor's inquiry.

54. By calling Plaintiff on her cellular phone over forty (40) times after receipt of the June 5, 2026, Letter from Plaintiff's Counsel, CHECK CITY violated Cal. Civ. Code §1788.14(c).

55. As a result of the constant collection calls by CHECK CITY, Plaintiff has experienced stress and irritability, as the constant and harassing collection calls by CHECK CITY were overwhelming. Therefore, Plaintiff has suffered actual damages as a result of Defendant's violations of Cal. Civ. Code §1788.14(c).

56. Further, as stated previously, Cal. Civ. C. § 1788.17 incorporates the FDCPA into the Rosenthal Fair Debt Collection Practices Act, therefore if an individual violated 15 U.S.C. § 1692d, they in turn violate the RFDCPA.

57. 15 U.S.C. § 1692d(5) provides in pertinent part,

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

58. The Consumer Financial Protection Bureau's Regulation F, which implements the FDCPA, establishes that a debt collector is presumed to violate 15 U.S.C. §

1692d(5) if the debt collector places telephone calls to a particular person in connection with the collection of a particular debt more than seven times within seven consecutive days. 12 C.F.R. § 1006.14(b)(2)(i)(A), (b)(2)(ii).

59. Therefore, Defendant's acts of calling Plaintiff over forty (40) times, multiple times per day, often in excess of seven (7) times per week, was a separate violation of 15 U.S.C. § 1692d(5), which is incorporated into the RFDCPA via Cal. Civ. C. § 1788.17.

**II.**

**SECOND CAUSE OF ACTION**

**Negligent and/or Willful Violations of the TCPA**

**(47 U.S.C. § 227, *et seq.*)**

60. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

61. Through the June 5, 2026, Letter sent by Plaintiff's Counsel, Plaintiff revoked any alleged consent for CHECK CITY or its agents or representatives to call Plaintiff on her cellular telephone via the use of an artificial and/or prerecorded voice.

62. The foregoing acts and omissions of CHECK CITY constitute numerous and multiple negligent and/or willful violations of the TCPA, including but not limited to every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

63. To properly plead a TCPA claim under 47 U.S.C. § 227(b), Plaintiff must allege the following elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). Because 47 U.S.C. § 227(b)(1)(A) is written in the disjunctive, the use of an artificial or prerecorded voice satisfies the second element in place of an ATDS. See *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163, 1172 n.8 (2021). To plead

these elements as required will obviously include overlap with the very statute that a Plaintiff alleges was violated. See *Vaccaro v. CVS Pharmacy, Inc.,* No. 13-CV-174 - IEG (RBB), 2013 U.S. Dist. LEXIS 99991, at *6 (S.D. Cal. July 16, 2013) ("It does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions. Factual allegations do not cease to be factual even if they quote a statute's language.")

64. Therefore, Plaintiff's allegations above regarding Defendant's conduct have satisfied all of the aforementioned requisite elements for a TCPA claim, thus Defendant violated 47 U.S.C. § 227(b)(1).

65. As a result of CHECK CITY's negligent violations of 47 U.S.C. §227, *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

66. As a result of CHECK CITY's knowing and/or willful violations of 47 U.S.C. §227, *et seq.*, the Plaintiff is entitled to an award of $1,500 in statutory damages for every one of CHECK CITY's knowing and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3).

67. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Defendant CCO California, Inc. d/b/a Check City herein, respectfully requests this Court enter a Judgment against Defendant as follows:

a. As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof;

b. As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

c. As to the First Cause of Action, an award of reasonable attorney's fees and costs

pursuant to Cal. Civ. Code §1788.30(c);

d. As to the Second Cause of Action, $500 in statutory damages for each and every one of Defendant's negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B); and $1,500.00 in statutory damages for each and every one of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), pursuant to 47 U.S.C. § 227(b)(3);

e. As to the Second Cause of Action, injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

f. For such other and further relief as the Court may deem just and proper.

Dated: November 7, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*
Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands a trial by jury on all issues triable by a jury.

Dated: November 7, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*

Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff